ARNOLD E. COON, *Administrator of* EDWIN W. COON *v.* JONAH SWAN AND AVERY MEEKER.

*Usury.    Attorney and client.    Privileged communications.*

A applied to B for a loan of money, offering to give him a note for double the amount of money furnished and to procure an insurance on his life in B's name, B to pay the expenses of procuring the policy, which expenses were to be included in the note; and A further agreed to pay all the premiums on the policy as long as B held it as security. B accordingly loaned A a sum of money and took his note on interest for double the amount loaned, and also including the expenses of a policy of insurance, procured in B's name on A's life, for a much larger sum than the amount actually loaned. A died and B received the amount of the policy from the insurance company.

*Held,* in an action of assumpsit by A's administrator against B, that all of the note except the amount actually loaned by B to A and the sum paid by B for the policy was usurious; tl.at B had no right to retain from the plaintiff any of the insurance money beyond the sum legally due upon the note; and that the plaintiff could recover the balance in that action.

*Held* also, that though, perhaps, the insurance company might have successfully resisted any claim upon the policy beyond the sum actually due from A to B, yet having voluntarily paid the full amount of the policy to B, under a claim of right, the company could not recover any part of the money back; and that, therefore, B could not interpose any such ground as an objection to the plaintiff's claim.

In order to render communications from a party to an attorney privileged from being disclosed in evidence by the latter, they must be of a confidential and professional character; and the attorney must be acting for the time being in the character of legal adviser; or the party must have good reason to suppose he is so acting.

Therefore, where one by profession an attorney, was endeavoring, merely as a neighbor and without any suit in court, to procure from an insurance company the allowance of a claim in favor of another, without anything being said by either party in regard to his being engaged in the matter or paid for his services, and with no intention or expectation on his part to charge anything therefor, it was held that admissions made to him by the claimant, while assisting him in this way, in regard to the nature of his claim, were not privileged from being disclosed in evidence by the attorney.

GENERAL ASSUMPSIT. Plea, general issue, and trial by jury, November Term, 1856,—PECK, J., presiding.

The plaintiff's testimony tended to show that Edwin W. Coon, the plaintiff's intestate, applied to the defendants for a loan of money to go to California, and proposed to give them a note for double the amount of money furnished him, and also to procure a policy of insurance upon his life as security for the money, under an agreement that the defendants were to advance also the money necessary to procure the policy, which was to be included in the note and to be repaid by Coon, and that Coon was to pay all future premiums on the policy to keep it in force. That the defendants did let him have three hundred dollars and paid for said policy of insurance and also some extra interest, being obliged to borrow the money themselves, which extra interest and the cost of the policy amounted to thirty-one dollars ; that the intestate thereupon executed to the defendants his promissory note for the sum of six hundred and thirty-one dollars, payable to the defendants or order, on or before one year from date, with interest. That a policy of insurance for the sum of six hundred dollars was procured according to such agreement, upon the life of the intestate in the name of the defendants, which policy was to continue for seven years, provided the premium was paid annually.

That the said Edwin W. went to California and died there within a year after the date of said policy, and that the defendants shortly afterwards received upon said policy from the insurance company the full amount thereof.

To the admission of all which testimony the defendants objected ; but the court overruled the objection and admitted the testimony, to which the defendants excepted. The plaintiff also introduced in evidence the said policy of insurance, together with the following agreement indorsed on the policy and signed by the intestate : " I

hereby agree to pay all assessments on the within named policy for seven years, or as long as the applicants in said policy hold the same as security for money received."

Hector Adams, an attorney of record of the court, was introduced as a witness for the plaintiff, and stated that in the fall of 1853, while the witness was a member of the legislature of Vermont, the defendant Swan handed him the policy in question, together with some papers and proofs connected therewith, and requested him to present it to the insurance company which issued the policy, at Montpelier, and get the defendant's claim under it allowed; that he did so present the claim, and the president of the company demanded further proof of the death of the intestate and defendant's interest in his life; that shortly after being in Milton, the witness informed Swan what the company required, whereupon Swan communicated to the witness all the above recited circumstances relative to the whole transaction between the defendants and the intestate; that the witness shortly after, on his return to Montpelier, exhibited to the company the note and some additional evidence relative to the intestate's death, and procured the allowance by the company of the whole amount insured in the policy, and delivered the certificate of allowance to Swan; that after the business was closed, Swan offered to pay the witness, but he declined receiving anything. The witness further stated that nothing was said to him by either of the defendants about engaging him, and that what he did in the matter he did gratuitously as a neighbor, as he frequently had done like services, not charging or intending to charge anything.

The defendants objected to the admission of Adams' testimony relative to Swan's statements to him, but the court admitted the evidence, to which the defendants excepted.

The defendants offered to show that when the intestate applied to them for the money, they informed him that they had not the money themselves, whereupon he asked them to get it for him, and promised, if they would do so, to give them a note and pay for an insurance as above stated; that they accordingly did borrow the money of a third party, which they let the intestate have, and took the note of him in accordance with the agreement; that they applied for the policy in their own name, and paid for it out of their

own money, and that the expense of the policy and the extra interest paid by them were included in the intestate's note according to the agreement between them and him.

To this evidence the plaintiff objected, and the court held that it was immaterial whether the defendants had the money on hand or borrowed it solely on their own credit, and that, if the agreement between the defendants and the intestate was that the policy was to be procured at the latter's expense, it was immaterial which of them procured it, and excluded the evidence; and instructed the jury, among other things, that if the plaintiff's testimony was believed, he was entitled to recover as usury the balance of the money received of the said insurance company by the defendants, after deducting sufficient to pay the defendants the three hundred dollars and the money paid by them for the policy, and interest thereon up to the time of the payment to them by the insurance company. To which the defendants excepted.

*H. B. Smith*, for the defendants.

As the insurance was procured by the defendants in their own names, and for their own benefit, and was paid for by them, the money received from the company does not in any sense, belong to the intestate's estate. His agreement to repay to the defendants the expenses of the policy, and to pay the annual premiums, does not affect the question, because he never fulfilled it by paying anything to the defendants. He cannot recover anything as usury, unless he has actually paid something. *Stewart* v. *Downer*, 8 Vt. 320 ; *Thatcher* v. *Gammon*, 12 Mass. 268 ; *Day* v. *Cummings*, 19 Vt. 496.

The insurance company were not bound to pay to the defendants anything more than their actual legal claim against the intestate, that being the extent of their interest in his life ; and all payments beyond that amount were made by the company in their own wrong, and cannot be recovered by the plaintiff. *Godsal* v. *Boldero*, 9 East 72 ; Ellis on Insurance (Shaw's edition) 239 ; *Henson* v. *Blackwell*, 4 Hare 434.

Adams was improperly allowed to testify. The fact that an attorney who has had business confided to him, does it gratuitously, does not permit him to expose the secrets of his client.

Coon, Administrator, *v.* Swan et al.

*Peck & Harvey*, for the plaintiff.

The note was usurious; the policy belonged to the intestate, having been obtained at his expense and placed in the defendant's hands as a security for their claim, with the intestate's agreement to keep it in force; the insurance money was received by the defendants from this security, and they are accountable for the excess of the fund above the debt. *King* v. *State Mutual Fire Insurance Company*, 7 Cush. 1; *Roberts* v. *Trader's Insurance Company*, 17 Wend. 631; *Tyler* v. *Ætna Insurance Company*, 16 Wend. 385; *Carpenter* v. *Providence Washington Insurance Co.*, 16 Peters 495.

Adams was properly admitted as a witness.

*a.* The mere engagement of an attorney does not render the communication privileged. The engagement must be professional, *i. e.*, peculiar to the office of an attorney as such. The present one was not of that description.

*b.* The engagement was made with the witness as a neighbor, and the services were performed by him gratuitously.

*c.* If professional, the communication had only an accidental connection with it, not having been made as the basis of any action, or for the purpose of any advice by the witness. 4 E. C. L. 1; 2 B. & C. 745; 5 C. & P. 592; 6 *id.* 363; 6 M. & W. 546; 1 Caine's Rep. 157; 12 Pick. 89; 2 Vt. 185; 4 Vt. 612; 25 Vt. 47; 1 C. & P. 158; 3 *id.* 518; 1 Phil. Ev. 143, 147; 1 Greenl. Ev. 244; 1 Cow. & Hill's Notes 275, 283; 4 Term. 432.

The opinion of the court was delivered by

BENNETT, J. The defendants in this case held the policy of insurance in trust for the intestate, and as collateral security for the payment of the note. The money when paid on the policy, in equity and good conscience, belonged to the estate of the intestate ; and from the case made in the bill of exceptions, the defendants can have no legal or equitable right to retain any portion of the money paid them by the insurance company, to pay the usurious interest included in the note. The money was a fund raised at the expense of the intestate, and placed in the hands of the defendants for a special purpose, and that purpose having been accomplished so far as the defendants had a legal right to have it accomplished, they

can not retain the surplus for the sake of paying the usury reserved in the note. There was no consideration to give a right to retain any money to pay the usury reserved in it. See 7 Cushing 6. It may be that the insurance company could not have been compelled to pay on the policy a sum beyond the defendants' real debt and interest against the intestate; yet be that as it may, they having paid it under a claim of right, the payment would be regarded as *voluntary*, and the surplus could not be recovered back, and of course the defendants could not interpose an objection to the plaintiff's recovery upon any such ground.

To create a right of privilege it is not enough that the person called as a witness should have been an attorney. The relation of attorney and client must have existed (or there must have been at least good reason to suppose it existed), and the communications must have been of a *confidential and professional* character, to bring them within the reason of the rule which should exclude them upon grounds of public policy. The counsel or attorney should be acting for the time being in the character of *legal adviser*, or at least the party should have good reason to suppose he was so acting. The witness in this case says that he did not act in his consultation with the party as an attorney, but simply as a *neighbor*, and that he neither charged or expected any compensation, and there is nothing in the case to show that the party understood it in any other light at the time. We think, then, Mr. Adams was properly admitted as a witness.

The judgment of the county court is affirmed.