JOSEPH PELTIER *v.* NORBERT LAROSE.

January Term, 1926.

Present: WATSON, C. J., POWERS, TAYLOR, SLACK, and BUTLER, JJ.

Opinion filed February 3, 1926.

*Brokers—Evidence Characterizing Acts of Defendant—Fraud—*
*Conformity of Evidence to Complaint—Presumption in*
*Relation to Admission of Direct Evidence Supporting*
*Allegations of Complaint—Harmless Error—Witnesses—*
*Privileged Communications—New Trial—Likelihood of Dif-*
*ferent Result at Another Trial—Jury Question—Cumula-*
*tive Evidence—Due Diligence.*

1. In action of tort for fraud by broker in sale of farm, where complaint alleged fraud to have consisted in false representations that farm contained 300 acres, when in fact it contained only about 200 acres, after plaintiff had introduced evidence tending to show he had informed defendant that he desired a farm of at least 300 acres, and had been assured by defendant that farm in question was of that acreage, evidence that defendant, in reading to plaintiff, who could neither read nor speak English, written contract to which preliminary negotiations had been reduced, misread contract to state that farm contained 300 acres, *held* admissible as tending to support allegations of complaint, and as characterizing acts of defendant in matter complained of.

2. In such action, where certain statements admitted in evidence constituted direct evidence tending to support allegations of complaint, it will be presumed that such statements were received for that purpose, the contrary not appearing.

3. In such action, error, if any, in excluding evidence offered by defendant that plaintiff, several years after buying farm in question, had negotiations about reducing amount of purchase price mortgage, and then made no claim respecting any misrepresentation as to acreage, *held* harmless, since plaintiff on cross-examination had had his attention called to these occasions and admitted the matters sought to be proved by evidence offered.

4. Communications made by a party to his attorney in regard to any matter upon which he consults latter are privileged, if attorney is then acting as legal adviser of party and communication is made to attorney confidentially as counsel.

5. In action of tort for fraud in sale of farm, where only issue at trial was whether defendant misrepresented farm to contain 300 acres when in fact it contained but 200 acres, newly discovered evidence tending to show that after purchase plaintiff had stated that farm contained 200 acres more or less, and expressed himself as well pleased with trade, *held* to make it reasonably probable that a different result would be reached on another trial, and to justify a new trial.

6. In such action, whether defendant's misrepresentation was unknown to plaintiff at time he made such statements as to acreage and expressed satisfaction with farm, *held* a question for the jury.

7. In such action, newly discovered evidence offered in support of petition for new trial, *held* not merely cumulative.

8. Defendant petitioning for new trial on ground of newly discovered evidence, of which neither he nor his counsel had any knowledge prior to trial, nor any information to put them upon inquiry with respect thereto, *held* not to have shown such lack of diligence as should deprive him of benefit of such evidence.

ACTION OF TORT for fraudulent representations by broker in sale of farm. Plea, general issue. Trial by jury at April Term, 1925, Franklin County, *Graham*, J., presiding. Verdict and judgment for plaintiff. The defendant excepted, and petitioned for new trial on ground of newly discovered evidence. The opinion states the case. *Exceptions overruled, judgment and verdict set aside, petition for new trial granted, and cause remanded.*

*D. W. Steele* and *M. H. Alexander* for the defendant.

*F. L. Webster* for the plaintiff.

SLACK, J. The action is tort for fraud and deceit in the sale of a farm. The questions for consideration are raised by defendant's exceptions and his petition for a new trial, which is based on newly discovered evidence.

In the summer of 1920, the defendant, acting as agent for

one Stowe, sold the plaintiff a farm in the town of Berkshire in this State. The plaintiff claims that he was induced to purchase the farm through the false and fraudulent representations of defendant respecting its acreage, and brings this suit to recover damages resulting from such fraud. The complaint alleges, in substance, that the defendant falsely, fraudulently, etc., represented to plaintiff that the farm contained three hundred acres of land when in fact it contained only about two hundred acres. All talk and negotiations concerning the sale were had on August 16, 1920, and on the same day, after the terms of sale had been agreed upon by plaintiff and defendant, a written contract of sale purporting to embody such agreement was signed and executed by plaintiff and Stowe. Some weeks later, the deed and other papers necessary to complete the transaction were executed by plaintiff and Stowe. The written contract of August 16, contains the following statement respecting the acreage of the farm: "said to contain about 200 acres of land." The deed makes no mention of the acreage. Plaintiff is a Canadian Frenchman and neither reads nor speaks English, while Stowe neither reads nor speaks French. The defendant is familiar with both languages, and throughout the negotiations acted as interpreter for both plaintiff and Stowe whenever such services were necessary. Plaintiff's evidence tended to show that he told defendant before they went to the Stowe farm that he wanted a large farm because he had six large boys to help him; that while he and defendant were looking over that farm he told defendant: "I want a 300 acre farm anyway;" and that defendant told him several times during the negotiations, before the written contract was made, that the Stowe farm contained three hundred acres.

[1, 2]  Plaintiff was then permitted to show, subject to defendant's exceptions, that after the August 16 contract was prepared defendant read it to him, or pretended to, and that in so doing: "He read 300 acres;" and that after the deed which Stowe later gave plaintiff had been written defendant read that to him and in so doing: "He read that was 300 acres." The only objection to this evidence was that there could be no recovery under the allegations of the complaint for any misinterpretation or misstatement as to the contents of these instruments —it was not challenged on the ground that the misstatements were made after the terms of the sale had been agreed upon.

The objection made is without merit. The nature of the misstatements was such as to constitute direct evidence tending to support the allegations of the complaint, and the contrary not appearing, they will be presumed to have been received for that purpose. Moreover, such misstatements related to the same transaction in which fraud is charged, and were admissible under the rule laid down in *Downing et al.* v. *Wimble*, 97 Vt. 390, 123 Atl. 433, and *Niles* v. *Danforth et al.*, 97 Vt. 88, 122 Atl. 498, to characterize the acts of defendant in the matter complained of.

[3]    The defendant offered to show by Mr. Stowe, the former owner of the farm who held a mortgage thereon for part of the purchase price, that about two years after the sale, plaintiff had a talk with him about reducing the amount of the mortgage and that at that time plaintiff made no claim respecting any misrepresentation as to the acreage of the farm.

The defendant also offered to show by one Giroux that subsequently he went with plaintiff to see one Steele, who was attorney for Stowe, to see if Steele would try to get Stowe to reduce the mortgage and that plaintiff made no claim at that time of any misrepresentation respecting the acreage of the farm. Both offers were excluded, and defendant excepted. We take no time to consider the merits of these exceptions, since the record shows that plaintiff's attention was called to these occasions on cross-examination and he then admitted that he saw both Stowe and Steele at the times indicated for the purpose of seeing if the mortgage could be reduced, and that he made no claim to either of them that the acreage of the farm had been misrepresented to him. In this situation, the error, if any, in excluding the offered evidence was harmless.

It remains to consider the merits of defendant's petition for a new trial. The newly discovered evidence is submitted in the form of affidavits, and relates to divers conversations with plaintiff about the farm and farm trade after he purchased the farm and prior to the summer of 1923 in which he said that the farm contained two hundred acres, more or less; or that it contained two hundred and five acres, or expressed himself as well pleased with his trade and made no claim of misrepresentation respecting the acreage.

Peter Archambault, who lives in Cowansville, P. Q., says, in substance, that he is well acquainted with plaintiff; that he lived in a tenement house on plaintiff's farm (the farm in question)

about three months early in 1922; that he had frequent talks with plaintiff respecting the farm during that time; that plaintiff told him on different occasions that the farm contained two hundred acres, more or less, and at one time talked with him about buying one hundred acres of adjoining land so to have a farm of three hundred acres.

Servile Lagrace, who lives in Frelighsburg, P. Q., says, in substance, that he is well acquainted with plaintiff; that they frequently visited back and forth during 1920, 1921, 1922, and 1923; that they often discussed the merits of their respective farms; that plaintiff expressed himself as well satisfied with his trade, and never mentioned any misrepresentation concerning the acreage.

. H. J. Ladue, who resides in Enosburg, Vermont, says that during the latter part of 1921 and in 1922 he acted as interpreter for the plaintiff and Stowe on various occasions when they talked about the farm and farm trade; that on those occasions, plaintiff claimed that he had paid too much for the farm, and tried to get Stowe to reduce the amount, but never made any claim that the acreage of the farm had been misrepresented to him.

Peter Larose, who lives in Enosburg, Vermont, says that he has known plaintiff ever since the latter came to Vermont; that they frequently visited each other, and on those occasions often talked over farm matters; that plaintiff appeared to be well satisfied with his farm and always claimed whenever the subject was mentioned that he bought two hundred and five acres, more or less; that these talks occurred in the latter part of 1920, in 1921, and the early part of 1922; that about August 12, 1922, he went with plaintiff to the office of lawyer McFeeters in Enosburg Falls to act as interpreter for plaintiff; that while there McFeeters asked plaintiff the number of acres in the farm he bought of Stowe, and plaintiff replied: "Two hundred five acres, more or less."

The talk between plaintiff and McFeeters referred to in the latter part of Larose's affidavit is corroborated by McFeeters, who says further, in brief, that he was employed by plaintiff to try and get Stowe to reduce the amount of his claim against plaintiff; that he had various interviews with plaintiff concerning the farm transaction; that plaintiff claimed that he paid too much for the farm, but never claimed any shortage of acreage or any misrepresentation respecting the same.

[4]   In his answer plaintiff denies the talk at McFeeters' office on August 12, 1922, and insists that neither that talk, if such there was, nor any of McFeeters' evidence can be used against him because privileged.   The general rule in respect to such matters is well understood.   Communications made by a party to his attorney in regard to any matter upon which he consults the latter are privileged.   *Childs* v. *Merrill*, 66 Vt. 302, 29 Atl. 532.   But the attorney must be acting as the legal adviser of the party at the time (*Coon* v. *Swan*, 30 Vt. 6) ; and the communication must be to the attorney confidentially as counsel. *Earle* v. *Grout*, 46 Vt. 113.   It would be difficult to determine from what appears in McFeeters' affidavit alone what part of the circumstances or conversation detailed by him, if any, is privileged and what is not; and since other evidence requires the granting of the petition, we leave the admissibility of this evidence to be determined when the relation between plaintiff and McFeeters can be more definitely ascertained.

The only issue at the trial, other than that of damages, was whether defendant misrepresented the acreage of the farm.   So far as appears only four persons who could speak or understand French were present during the talk which resulted in the sale, namely, the plaintiff, defendant, Albert Larose, and T. Y. Young. The plaintiff testified to the alleged misrepresentation; this was denied by the other three, who testified that defendant told plaintiff that the farm contained about two hundred acres, or two hundred and five acres.   The misreading of the August 16 contract and deed was testified to by plaintiff and his wife, and denied by defendant.   This was all the direct evidence bearing on the main issue.

[5, 6]   With the evidence standing thus, the important bearing of admissions or statements by plaintiff of the character set forth in Archambault's affidavit is apparent.   Such evidence has a tendency to refute not only the claimed misrepresentation but also the claim that plaintiff did not then know of such misrepresentation.   We think, too, that plaintiff's failure to assert any claim of misrepresentation to the other affiants, in the circumstances disclosed by the affidavits, tends to show the nonexistence of such misrepresentation.   Of course he was not obliged, even if he then knew of such misrepresentation, to tell his friends or others, with whom he chanced to talk concerning the farm or farm trade, about it; but the improbability of his

expressing himself as satisfied with the farm and with his trade without even referring to defendant's misconduct, when thereby he only got two-thirds as much land as he contracted for, is so great as to seriously detract from his claim in that respect. Especially is this true concerning his talks with Stowe when he was seeking to have the purchase price reduced, as testified to by Ladue. Whether, as plaintiff claims, defendant's misrepresentation was unknown to him at the time of the various talks referred to in the affidavits is for the jury. Aside from defendant's evidence on this question, it appeared that plaintiff had lived on a one hundred acre farm in Canada before coming to Vermont; that his knowledge of the size of farms was such that he wanted a ''300 acre farm any way,'' and that he had occupied the farm in question from a year to eighteen months when many, if not all, of the talks related by the affiants took place. We think that the character of the new evidence, aside from that claimed to be privileged, is such as to make it reasonably probable that a different result will be reached on another trial.

[7, 8]   It is urged that the new evidence is cumulative, and that due diligence in discovering it is not shown. Neither point is well taken. The evidence is not cumulative, merely. *Bradish* v. *State,* 35 Vt. 452; *Gilman* v. *Nichols,* 42 Vt. 313; *Prouty et al.* v. *Blanchard,* 93 Vt. 206, 106 Atl. 831. Concerning the diligence shown, it appears that all persons who were in a position to know what was said or transpired when the trade was made were called as witnesses. The petitioner and his attorneys swear, in effect, that they had no knowledge of what the affiants knew concerning the case until after the trial below, and this is corroborated by the affidavits of Archambault and Lagrace, who swear that they never told anyone the facts which appear in their respective affidavits until August or September following the trial in April, 1925. Nor does it appear that the petitioner or his attorneys had any information, prior to the trial, that should have put them upon inquiry concerning the affiants. In short, the case does not show such lack of diligence on the part of the petitioner as should deprive him of the benefit of the newly discovered evidence.

*Exceptions overruled, petition sustained with costs, judgment and verdict set aside, new trial granted, and cause remanded.*