### In re John D. Bassette d/b/a John Bassette, Realtor

[518 A.2d 15]

No. 85-129

Present: **Allen, C.J., Hill, Peck, Gibson and Hayes, JJ.**

Opinion Filed August 14, 1986

Motion for Reargument Denied September 24, 1986

*P. Scott McGee* and *Claude Thaddeus Buttrey,* Law Clerk (On the Brief) of *Hershenson, Carter* and *Scott,* Norwich, for Plaintiff-Appellant.

*Jeffrey L. Amestoy,* Attorney General, and *Samuel E. Johnson* and *Robert W. Gagnon,* Assistant Attorneys General, Montpelier, for Defendant-Appellee.

*Thomas F. Heilmann,* Burlington, for amicus curiae Vermont Association of Realtors, Inc.

**Hayes, J.** The Vermont Real Estate Commission (Commission) ordered the real estate license of John D. Bassette suspended for a period of fifteen days for violation of 26 V.S.A. §§ 2296(a)(3) and (a)(8). Mr. Bassette appeals. We affirm.

In March, 1981, Robert Engler, a principal of Stockard and Engler, Inc. (S & E), approached Bassette and explained his company's need to secure exclusive options on property in the Hartford area to aid in the preparation of a bid for a "turnkey" project for the Federal Housing and Urban Development Agency (HUD).* It was clear from the outset that the bidder with the best sites would have a competitive edge in submitting a proposal

---

\* In a "turnkey" project, a municipality applies to HUD for a grant to construct federally financed housing for low income and elderly tenants. With HUD approval, the municipality advertises for proposals from developers. An approved builder constructs the project and then turns over ownership to the municipal housing authority for a fixed price.

to HUD. By telephone on April 24, 1981, Engler and Bassette discussed the specifics of the HUD requirements, including design criteria, accessibility needs for the elderly, and the ideal types of sites. Subsequent to a personal meeting between Engler and Bassette on April 28, 1981, agents of S & E visited Vermont, and Bassette showed them additional property. Bassette agreed to seek options for Engler, and Engler authorized him to offer $500 to secure each option. Engler did not request Bassette's representation in negotiations for the purchase of any property. In the event that S & E purchased any of the property under option, it was understood that Bassette would earn his commission from the seller.

In the middle of July, 1981, Bassette became a principal in the Hartford Development Company, whose activities competed directly with S & E in bidding for the HUD project. Bassette testified that, soon after his undertaking with the Hartford Development Company, he disclosed his involvement to a person he claimed was an agent of S & E, Nick Elton, who was then in Vermont. Complainant Engler, however, testified that Elton was a retained architect, and not his agent. Bassette did not otherwise seek to make this new relationship known to S & E. On July 24, 1981, the day before the bids on the HUD project were due, Engler discovered that Bassette was preparing a rival bid for the Hartford Development Company. In addition, he learned that one of the sites that Bassette had previously identified as unavailable as a residential site appeared in the bid proposal for the Hartford Development Company.

According to its witnesses, S & E spent a considerable sum of money in preparing and submitting its bid proposal, which ultimately was unsuccessful. While the Hartford Development Company was also unsuccessful, S & E maintained that Bassette's failure to exercise due diligence and his failure to notify it of potential and actual conflicts of interest, as well as his failure to adhere to his obligations of trustworthiness and confidence, harmed its proposal.

The matter was first heard and determined by the Commission in 1982. This Court reversed and remanded on September 14, 1983 for further findings. The Commission issued additional findings on February 19, 1985.

First, appellant Bassette asserts that the seventeen-month delay between the remand order by this Court and the issuance of

additional findings violated his due process rights. Real Estate Commission hearings, like any quasi-judicial administrative proceedings, "must faithfully observe the rudiments of fair play." *Vermont Real Estate Commission* v. *Martin,* 132 Vt. 309, 312, 318 A.2d 670, 672 (1974). An unreasonable delay in an administrative proceeding can, under certain circumstances, amount to an impermissible variance from the standards of fair play. Not every administrative delay, however, is a deprivation of due process.

■ In the present case, appellant complains of the delay in receiving the Commission's new findings after remand, but makes no specific allegations of prejudice. He cites *Indiana Alcoholic Beverage Commission* v. *State ex rel. Harmon,* 173 Ind. App. 636, 365 N.E.2d 1225 (1977), *modified,* 269 Ind. 48, 379 N.E.2d 140 (1978), for the proposition that unreasonable delays in administrative proceedings may violate notions of "fundamental fairness" protected by the due process clause. That case, however, differs significantly from the one at bar. There, the Alcoholic Beverage Commission failed to act in timely fashion on an application for a permit. The applicant, meanwhile, was unable to conduct his business. Similarly, in *John A.* v. *Gill,* 565 F. Supp. 372, 384-85 (N.D. Ill. 1983), the failure of the Illinois superintendent of education to respond in timely fashion to the petition of a handicapped child concerning appropriate placement postponed the enjoyment of important rights. By contrast, the delay in the instant case has not subjected appellant to any professional disabilities. His conduct as a broker has not been restrained in any way.

The principal substantive issue in the instant case is appellant's assertion that the Commission and S & E failed to establish that his conduct amounted to bad faith or untrustworthiness within the meaning of 26 V.S.A. §§ 2296(a)(3) or (a)(8). Those sections state as follows:

A licensee commits unprofessional conduct if the licensee:

. . . .

(3) demonstrates incompetency to act as a real estate broker or salesperson;

. . . .

(8) is found by the commission to have engaged in any act or conduct, whether of the same or different character as

that described above, which contributes to or demonstrates incompetency or dishonest fraudulent dealings . . . .

Appellant argues that S & E was simply a prospective buyer of real estate whose contacts with appellant amounted to no more than a casual inquiry which did not give rise to contractual or fiduciary obligations. The Commission, however, concluded that the relationship between appellant and S & E went much further and created fiduciary duties. At the heart of this responsibility, according to the Commission, was the undertaking by Bassette to assist S & E in obtaining exclusive options on properties suitable for the HUD application. While the undertaking by appellant on behalf of S & E was narrow and specific, it fell well within the definition of activities performed by brokers under 26 V.S.A. § 2211. See specifically 26 V.S.A. § 2211(4)(E). Obtaining options that would be beneficial to S & E in its HUD project required the exercise of considerable skill. Because of appellant's undertakings, the Commission found that S & E refrained "from using other brokers and more of their own efforts to diligently seek exclusive options on suitable properties." The Commission concluded that such an undertaking implied the duty to perform both skillfully and loyally. We agree. See *Prouty* v. *Blanchard,* 93 Vt. 206, 209, 106 A. 831, 833 (1919) (real estate broker must act with utmost good faith and loyalty in futhering and advancing interests of his principals); *Vermont Marble Co.* v. *Mead,* 85 Vt. 20, 28, 80 A. 852, 856 (1911) ("the law requires the utmost good faith from agents"). Based on the evidence and findings, it was abundantly clear to appellant that S & E's objective was to write a successful HUD proposal, not simply to purchase a house. The evidence supported the Commission's conclusions that appellant should have known the relationship with S & E was an exclusive one.

The Commission specifically found that appellant violated the applicable standard of trustworthiness under 26 V.S.A. § 2296(a) when he entered into competition with S & E for the turnkey proposal without first fully disclosing this fact. See *Henderson* v. *Hassur,* 225 Kan. 678, 689, 594 P.2d 650, 659 (1979) (broker, under contract to locate property sites, violated fiduciary duty owed to principal when he entered into agreement to share in profit at the expense of his principal); *Starkweather* v. *Shaffer,* 262 Or. 198, 203, 497 P.2d 358, 360 (1972) (broker's fiduciary rela-

tionship with his client creates burden of showing full and complete disclosure). Bassette made no disclosure of the extent of his competing interest until the last day of the competition for the HUD turnkey project. In addition to competing with S & E, appellant compounded the breach of trust by using information which he acquired from Engler in preparing his competing proposal. Appellant was under an affirmative duty to give S & E notice of all information of which he was aware relevant to S & E's business, *Veach v. Meyeres Real Estate, Inc.*, 599 P.2d 746, 748-49 (Alaska 1979); *Hopkins v. Wardley Corp.*, 611 P.2d 1204, 1206 (Utah 1980), including his own involvement with a competing company. *Jensen v. Peterson*, 264 N.W.2d 139, 142 (Minn. 1978); *Boulevard Plaza Corp. v. Campbell*, 254 Minn. 123, 131-32, 94 N.W.2d 273, 281 (1959). Appellant failed in this duty.

In summary, appellant voluntarily undertook a commitment requiring skill and loyalty to assist S & E in the pursuit of a specific business project. It is unreasonable for appellant to argue, after undertaking complex and specific duties in support of a unique business project, that he owed no greater duties than he was bound to provide to casual home buyers.

Appellant makes much of the point that S & E was not obligated to compensate him, and that at all times they knew that he would remain a broker acting on behalf of sellers with respect to any property put under option. That argument is without avail. Although appellant's ultimate source of remuneration would have been the sellers of any property put under option, his inducement to work with S & E was clear. To the extent that he furthered S & E's HUD application, he enhanced the possibility of earning a brokerage fee on the several properties involved in any successful project application. The relationship was not gratuitous. Even if it had been, however, appellant's undertaking to act on behalf of S & E clearly gave rise to a fiduciary obligation.

*Affirmed.*