GARDNER B. ARNOLD v. E. X. SOMERS, F. M. ABBOTT, CHARLES WEEKS, W. J. ALDRICH, A. P. LADD, J. E. ALEXANDER, AND AMERICAN NEWS VENDING COMPANY.

May Term, 1917.

Present: WATSON, C. J., HASELTON, POWERS, TAYLOR, and MILES, JJ.

Opinion filed November 13, 1918.

*Conspiracy—Harmless Error—Limiting Evidence—Excluding Evidence—Fraud—Actionable Fraud—Misrepresentations not Actionable—Connection with Damage—Whether Expression of Opinion or Assertion of Fact for Jury—Caveat Emptor—Evidence—Damage—Jury Question — Principal and Agent—Interest of Agent—Principal Liable for Agent's Fraud — Respondeat Superior — Corporation Officer not Liable for Agent's Fraud—Immaterial Evidence—Ground not Claimed Below not Considered—Defence—Evidence of Property Owned—Instructions—Not Misleading—Requests —Property Refused—Element Omitted from Request—Request as to Matter not in Issue.*

In a buyer's action for fraud in the sale of manufacturing rights in a patented vending machine, in which the defendants were charged with a conspiracy to defraud him, the question of a conspiracy was important only as it gave character to the individual acts of the defendants, and charged all with the legal consequences of such acts.

Limiting certain of plaintiff's evidence to one defendant only was harmless error, where similar evidence had already been received without objection or limitation, and the jury found in favor of the other defendants on the claim of conspiracy.

It was harmless to exclude a question asked one of the defendants on cross-examination as to his knowledge of a certain fact when, in further cross-examination, it inferentially appeared that he had no knowledge of such fact.

To constitute "actionable fraud" in the sale of property by false representations, the representations must be of existing facts relating to the subject-matter of the contract and affecting its essence and substance, made as inducement, false to the maker's knowledge when made, or made of his own knowledge without knowing them to be true, not known to the purchaser to be false, and relied upon by him to his damage.

In a buyer's action for fraud in the sale of the manufacturing rights of a patented vending machine, wherein the seller's salesman was to have a half interest which was paid for by his commission on the sale, of which fact the plaintiff was ignorant, the salesman's representations to the plaintiff that he had the means to pay for a half interest in the rights and would pay cash for the same, were not actionable, because they did not relate to the subject-matter of the contract, and there was no casual connection between them and the damages claimed to have been suffered.

It appearing that the vending machine had a structural defect which materiallly affected its value, the question whether a representation that the machine was perfect and the best of its kind in existence, was an expression of opinion or an assertion of fact, was for the jury.

The essential elements of fraud having been established, the rule of *caveat emptor* did not apply.

Evidence that the plaintiff had the opportunity, which was exercised, to examine the machine and its operation bore only upon the question whether he relied upon the false representations and was deceived thereby.

The plaintiff disposed of the manufacturing rights to a corporation at a profit by taking stock in payment, and there was evidence that the corporation became bankrupt because the rights were valueless. *Held,* that whether the alleged fraud resulted in damage to the plaintiff was a jury question.

Every agency is subject, as matter of law, to the legal limitation that it cannot be used for the benefit of the agent himself, or of any person other than the principal, in the absence of an agreement that it may be so used.

There being evidence that the selling corporation, with knowledge that its salesman was personally interested in the sale of the rights, authorized him to act as its agent in the negotiations with the plaintiff, the question of its liability for the false representations of its salesman was properly submitted to the jury.

There being no evidence to connect the president of the selling corporation with its salesman's fraud, he was not liable under the doctrine of *respondeat superior;* the salesman not acting as his agent.

The admission of evidence on cross-examination of the corporation's president, objected to as immaterial, that, at the time the contract for the sale of the rights was executed, the corporation's book containing the record of its director's vote to pay the salesman a commission for the sale of rights, was in the company's safe, and that, so far as the witness knew, the plaintiff knew nothing of the record, and that it was not called to his attention, was harmless because the record was later admitted in evidence without objection.

The admissibility of excluded evidence on a ground not claimed below, will not be considered.

Evidence that the machine in question was as perfect or more perfect than the other machines on the market used for a like purpose, was properly excluded; it being no defence that the machine was not more defective than like machines.

Evidence of the amount of property owned by the salesman at the time of the sale of the rights was admissible under the allegation that he represented that he had sufficient means to purchase one-half of the rights.

An instruction that the jury "will inquire whether there is any evidence tending to show conspiracy or fraud," and another, referring to certain evidence, "does that evidence tend to show fraud and conspiracy?" when considered with the rest of the charge, would not mislead the jury to believe that it was only necessary for them to find evidence tending to show fraud or conspiracy, to find a plaintiff's verdict.

A request for an instruction that no misrepresentation is fraudulent unless made with the knowledge of its falsity, and such knowledge

cannot be presumed from the mere falsity of the representation, was properly refused because it ignored false representations made as of one's knowledge without in fact knowing them to be true.

A request for an instruction as to a ground of recovery not claimed by the plaintiff was properly refused.

ACTION on the case for fraud. Plea, the general issue. Trial by jury at the March Term, 1916, Chittenden County, *Stanton, J.,* presiding. Verdict and judgment for the plaintiff against defendants E. X. Somers, J. E. Alexander, and American News Vending Machine Company. Verdict directed for the defendant Charles Weeks. Judgment on the verdict. Verdict and judgment for the defendants W. J. Aldrich, A. P. Ladd, and F. M. Abbott. Plaintiff and defendants both excepted. The opinion states the case.

*V. A. Bullard* and *Sherman R. Moulton* for the plaintiff.

The evidence excluded as against defendants Aldrich, Abbott and Ladd was admissible. Whatever is done by one conspirator, in the furtherance of the common scheme, is admissible against all his co-conspirators. *Jenne* v. *Joslyn,* 41 Vt. 478; *Patch Mfg. Co.* v. *Protection Lodge,* 77 Vt. 294.

A corporation may be liable in an action of conspiracy, although it can act only through its agents. *Aberthaw Const. Co.* v. *Cameron,* 194 Mass. 208, 80 N. E. 473; 120 Am. St. Rep. 542; *West Va. Transport Co.* v. *Standard Oil Co.,* 50 W. Va. 611, 40 S. E. 591, 88 Am. St. Rep. 895, 56 L. R. A. 804; *Zinc Carbonate Co.* v. *First National Bank,* 103 Wis. 125, 79 N. W. 229, 74 Am. St. Rep. 845. And see cases in note 12 L. R. A. 196.

*Charles H. Darling* and *Porter, Witters & Harvey* for the defendants.

The fraudulent representations of the vendor in a contract of sale do not afford a basis for an action unless the representations relate to the quality, quantity, or value of the article sold. *Stone & Wellington* v. *Robie,* 66 Vt. 245; *First Nat. Bank* v. *Yokum,* 11 Neb. 328, 9 N. W. 84.

Representations of facts which will exist in the future or promises or matters of judgment or opinion, though false and intended to deceive, do not form the basis of actionable fraud. *Hunt* v. *Lewis,* 87 Vt. 528; *Shanks* v. *Whitney,* 66 Vt. 405.

Statements merely descriptive of the operation and utility of an invention or patented article are generally regarded as mere expressions of opinion or "dealer's talk," upon which a purchaser cannot safely rely. *Neidefer* v. *Chastin,* 71 Ind. 363, 36 Am. Rep. 198; *Kimball* v. *Bangs,* 144 Mass. 321, 11 N. E. 113; *Deming* v. *Darling,* 148 Mass. 504, 2 L. R. A. 743; *Kernoille* v. *Hunt,* 4 Blatch. 57; *Bishop* v. *Small,* 62 Me. 12; *Dillman* v. *Nadlehoffer,* 119 Ill. 567, 7 N. E. 88; *Miller* v. *Young's Admr.,* 33 Ill. 54; *Gatling* v. *Newell,* 12 Ind. 118.

Every person dealing with an officer of a corporation who assumes to act for it in matters in which the interests of the corporation and the officer are adverse is put upon inquiry as to the authority and good faith of the officer. *Leigh* v. *American Brake Beam Co.,* 205 Ill. 147, 68 N. E. 713; *Farrington* v. *So. Boston R. R. Co.,* 120 Mass. 406, 15 Am. St. Rep. 222.

The officer of a corporation acting avowedly for himself or on behalf of another with whom he is interested in any transaction, cannot be treated as the agent of the corporation. *Innerarity* v. *Merchants Nat. Bank,* 139 Mass. 332, 1 N. E. 282; *Roberts* v. *Hughes & Co.,* 86 Vt. 76; *Finckle* v. *Hudson,* 82 Ala. 158; *Allen* v. *So. Boston Ry. Co.,* 150 Mass. 200, 5 L. R. A. 176; *Gunster* v. *Scranton, Etc., Co.,* 181 Pa. 327, 37 Atl. 550; *Merchants Nat. Bank* v. *Lovett,* 114 Mo. 519, 25 Am. St. Rep. 770; *Stratton* v. *Allen,* 16 N. J. Equity 229; *Barnes* v. *Trenton Gas Light Co.,* 27 N. J. Equity 33; *First Nat. Bank* v. *Christopher,* 40 N. J. Law. 435.

TAYLOR, J. The plaintiff sues for damages for fraud in the sale to him of certain rights in a patented vending machine known as the "Eureka Vendor." The defendants are the American News Vending Machine Company, the holder of the letters patent of the machine; E. X. Somers, at the time in question its president and general manager; J. E. Alexander, a commissioned salesman of stock and state rights of the company; A. P. Ladd, F. M. Abbott and W. J. Aldrich, members of its board of directors; and Charles Weeks, a stockholder. The trial was by jury. The court directed a verdict for Weeks and over-

ruled a motion for a directed verdict for the other defendants. The jury returned a verdict for the plaintiff against the company, Somers and Alexander and in favor of the defendants Ladd, Abbott and Aldrich. The plaintiff and the defendants that were held bring exceptions.

In his declaration plaintiff charges a conspiracy among the defendants to defraud him by false representations in the sale to him of the right to manufacture and sell said Eureka Vendor in the state of New York. Several fraudulent representations are alleged as a basis of recovery, but only two were relied upon and submitted to the jury as supported by the evidence. It may be noted in passing that the question of a conspiracy in such an action is important only as it gives character to the individual acts of the parties to it and charges all with the legal consequences of such acts. Note, Ann. Cas. 1914 C, 764. See *Saxe* v. *City of Burlington,* 70 Vt. 449, 41 Atl. 438.

It appeared that prior to January, 1912, Alexander was engaged by the American News Vending Machine Company, hereafter called the ''company,'' in selling the stock of the corporation on commission. On January 10, 1912, he entered into a contract with the company to sell state rights to manufacture its vending machines on a fifty per cent. commission. His business for the company took him to Barre, Vermont, in September, 1912, where he first met the plaintiff. He interested the plaintiff in the vending machine and first sold him some of the stock of the corporation. Later he directed plaintiff's attention to the matter of state rights and expressed a desire to find some one who would purchase the right for the state of New York with him. He found the plaintiff favorably inclined and proposed to ascertain the smallest amount for which the right could be bought. During the negotiations he showed the plaintiff a list of the maximum and minimum prices asked by the company for each state right outside of New England, the minimum for New York being about $22,000. Alexander secured from Somers, who had authority from the directors to fix the price of state rights within certain limits, a proposition for the New York right at $12,000 and certain royalties on the machines manufactured and $2,000 for the necessary manufacturing equipment. Later he met the plaintiff and submitted the proposition. After some talk it was arranged that the plaintiff should visit the factory of the company at St. Johnsbury. Accordingly plaintiff

visited the factory with Alexander, met Somers who showed him around and explained the working of the vending machine, and he thereupon decided to purchase the right with Alexander. In due time the contract was executed, and plaintiff paid his share of the first installment of the purchase price. Subsequently, as the deferred payments except the last came due, plaintiff handed Alexander his check drawn .to the company for his share and later received from Alexander, or was shown by him, the company's receipt for the whole payment. Plaintiff's share of the final payment was made in person to Somers, and a receipt for the final payment in full was given. As a matter of fact, Alexander actually paid no money to the company on account of his share; his proportion being represented by commissions on the sale of the right. The entries on .the books of the company, made under Somers' direction, treated the whole amount as received in cash and an amount equal to his commission paid out to Alexander. Pursuant to an arrangement contemplated in their contract with the company, Alexander and the plaintiff organized a corporation to which they transferred the New York rights, receiving therefor stock of the corporation of the par value or $26,000.

One of the alleged fraudulent representations on which the case was submitted to the jury was that Alexander stated to the plaintiff that he had the means to pay for a half interest in the right and tool equipment at the price of $14,000 and would purchase the same with the plaintiff and pay cash for his half of the price. The other was that Alexander represented to the plaintiff that the Eureka vending machines, as then being manufactured, were perfect and the best of their kind in existence.

We will first examine the plaintiff's exceptions. He was permitted to testify as against Alexander alone that he would not have entered into the contract to purchase the New York rights if he had known that Alexander was to pay nothing. He objected seasonably to the limitation, and now insists that it was error which should reverse the judgment in favor of defendants Aldrich, Abbott and Ladd. He had already testified without objection or limitation that in making the contract he relied upon the fact that Alexander was paying for his share of the right in cash. Besides, the jury found against him on his claim of a conspiracy involving these defendants on which he

relies to sustain the admissibility of this evidence against them, so his rights were not prejudiced by the limitation.

The plaintiff also excepted to the exclusion of the question asked defendant Aldrich in cross-examination, whether he knew of any action by the board of directors whereby Alexander was to receive a commission for selling the New York right to himself. But in further cross-examination plaintiff developed the fact that Aldrich knew of no arrangement with Alexander except the contract of January, 1912, which he had already testified about; so the exclusion of the question was harmless.

Plaintiff's exceptions are without merit.

We take up the defendants' exceptions in the order in which they are briefed. At the close of plaintiff's evidence and again at the close of all the evidence, the defendants severally moved for a directed verdict on various specified grounds. They argue three of the grounds under their exception to the action of the court in overruling their motions, viz.: (1) That there was no evidence that the defendants or any of them made any misrepresentations as to the quality, quantity, or value of the thing sold; (2) that there was no fraud practiced upon the plaintiff; (3) that there was no evidence that the plaintiff suffered any damage because of the alleged misrepresentations of the defendants or any of them.

The rule is well settled that to constitute actionable fraud in the sale of property the representations must be of existing facts relating to the subject matter of the contract and affecting its essence and substance, made as inducements to the contract, the representations being false and at the time known by the one making them to be false, or made of his own knowledge without in fact knowing them to be true, not open to knowledge of or known by the purchaser and relied upon by him in making the purchase to his damage. *Hunt* v. *Lewis*, 87 Vt. 528, 530, 90 Atl. 578, Ann. Cas. 1916 C, 170, and cases cited. Tested by this rule, the plaintiff was not entitled to recover on Alexander's representation that he had the means to pay for a half interest in the rights and property and would pay cash for the same. The representations, if made, did not relate to the subject-matter of the contract, but were merely collateral thereto and in part only promissory. Besides, on the evidence there was no causal connection between the alleged representations and the damage which plaintiff claimed to have suffered. See *Brackett* v. *Gris-*

*wold,* 112 N. Y. 454, 469, 20 N. E. 376; *Silver* v. *Frasier,* 3 Allen (Mass.) 382, 81 Am. Dec. 662, 21 Cyc. 137. He paid no more than he expected to pay and received all that he expected to receive. The loss, if any, on account of the venture was in no way attributable to the fact that Alexander did not pay for his interest in cash.

The defendants contend that the representation that the machines, as then being manufactured, were perfect and the best of their kind in existence, was an expression of opinion merely and so would not afford the basis of actionable fraud. Assuming that such a representation would ordinarily be a matter of opinion and for that reason not deemed fraudulent, the circumstances may be such that a representation based upon opinion will be fraudulent. If it is made as an assertion of fact with the purpose that it shall be so received, and it is so received, it may amount to a fraud. *Crompton* v. *Beedle,* 83 Vt. 287, 298, 75 Atl. 331, 30 L. R. A. (N. S.) 748, Ann. Cas. 1912 A, 399. We think that the evidence here made this a jury question, as it generally, though not always, is. *Belka* v. *Allen,* 82 Vt. 456, 462, 74 Atl. 91.

There was evidence fairly tending to show that fraud upon the plaintiff was practiced by Alexander. The making of the representation as to the quality of the machines was not controverted. It was admitted that they had a structural defect, and there was evidence that the defect materially affected their value. There were circumstances fairly tending to show that this representation was made and received as a representation of fact. No question is made but that as to him the other essential elements of actionable fraud were supported by the evidence.

It is urged as defeating plaintiff's right of recovery that he had an opportunity, which was exercised, to examine the machine and its operation and that the rule of *caveat emptor* applies. Such is not the doctrine of our cases. The evidence referred to in support of this claim bore upon the question whether the plaintiff relied upon the representation and was deceived thereby. But when the essential elements of a fraudulent representation are established, it is no excuse for the defendant, nor does it lie in his mouth to say, that the plaintiff might, but for his own neglect, have discovered the wrong and

prevented its accomplishment. *Maidment* v. *Frazier*, 90 Vt. 520, 527, 98 Atl. 987, and cases cited.

As to the last ground of the motion, it is urged that on all the evidence the plaintiff disposed of the rights and property at a profit, and any damage which he suffered was due to the mismanagement of the corporation whose stock he took in payment. It is not enough that the plaintiff received for the property purchased stock of a par value in excess of what he paid. The value of the stock was affected by the value of the right which it represented. While there was evidence tending to show that the New York corporation became bankrupt through mismanagement, other evidence tended to show that the right was worthless and that the failure of the corporation was due to this fact. Whether the fraud resulted in damage to the plaintiff became a jury question.

We hold that Alexander's motion for a directed verdict was properly overruled.

The liability of the defendant company depended upon its relation to Alexander at the time he was negotiating with the plaintiff for the purchase of the rights. It cannot be doubted that the plaintiff knew that Alexander was the company's agent for the sale of state rights and that he expected to benefit personally by the transaction. This knowledge so affected the situation that the company would be relieved of the ordinary liability of a principal for the acts of its agent on account of Alexander's representations in effecting the sale to himself and the plaintiff, unless, with knowledge of the facts, the company permitted him to continue to act as its representative. Every agency is subject to the legal limitation that it cannot be used for the benefit of the agent himself, or of any person other than the principal, in the absence of an agreement that it may be so used; and as this is a matter of law and not of fact, all persons must take notice of it. 21 R. C. L. 910. See *Roberts* v. *Hughes*, 86 Vt. 76, 87, 83 Atl. 807. The false representations in such circumstances are no less fraudulent, but liability therefor is not visited upon the one for whom the agent assumes to act unless the agency is continued in force by special agreement. But, if the agent's authority is thus continued, there is no valid reason why the principal should not be held to incur ordinary liability for his acts.

Thus it is seen that the question here is not controlled by the fact that Alexander was the company's agent generally for

the sale of state rights, but depends upon whether there was evidence tending to show that the company, with knowledge that Alexander was personally interested, authorized him to act as its agent in the negotiations with the plaintiff. There was ample evidence to show that in conducting such negotiations Alexander was acting within the scope of his employment, and the motion of the defendant company for a directed verdict was properly overruled.

As to defendant Somers, Alexander was not acting as his agent and the doctrine of *respondeat superior* has no application. Our attention is called to no evidence tending to show that Somers made or authorized the representations, nor that he knew of their being made. Plaintiff relies upon the claim of a conspiracy between Alexander and Somers to defraud the plaintiff, thereby making Somers liable for Alexander's acts in furtherance of the conspiracy.

The evidence relied upon to show conspiracy is wholly circumstantial, and it remains to consider whether it has the tendency claimed for it. It is argued that the claim is supported by the following facts: Somers was the president of the corporation and knew that a contract had been entered into with Alexander for the sale of state rights on a fifty per cent. commission. He did not know whether the plaintiff was aware of this fact and did nothing to enlighten him. He prepared a list of prices for state rights for Alexander's use and later arranged with him to take a smaller sum for the New York right than that named in the list. Under his direction, the books of the company were so kept that it appeared that Alexander had paid his share of the installments of the purchase price in cash and in turn received back the same amount in commission. He sent receipts to the plaintiff when he paid his share of the respective installments which purported to cover the whole installment. He was present when the plaintiff was about to draw a check for his share of the first installment, probably heard Alexander say that he would step into an adjoining room and write his check, and did not inform the plaintiff that Alexander's share was paid in commissions.

These circumstances are too colorless to fairly support an inference of such a conspiracy. The commission contract was entered into before the plaintiff was known to either Somers or Alexander. There was nothing significant about the method

adopted of keeping the account of the transaction. Instead of
an attempt, as the plaintiff claims, to conceal the fact that Alex-
ander was paying his share in commissions, if anything, the
books evidence the contrary intention. There are no earmarks
of fraud in the form of the receipt used, nor in the reduction of
the price asked for the right. The intentional concealment of
no fact that would have influenced the plaintiff is shown. In
the absence of evidence of a conspiracy, there was nothing in the
case to connect Somers with Alexander's fraud, and his motion
for a directed verdict should have been sustained.

Defendant Somers was called as a witness by the plaintiff.
During cross-examination his counsel produced the record book
of the defendant company and called attention to certain pages
containing a record of the meeting of the directors at which it
was voted to pay Alexander a fifty per cent. commission for
the sale of rights. Plaintiff's counsel objected to the introduc-
tion of the record and asked leave to propound preliminary ques-
tions bearing on its admissibility, which was granted. Against
the objection that it was immaterial, plaintiff was permitted to
show that at the time the contract with the plaintiff and Alex-
ander was made and signed, the book was in the company's safe,
that so far as witness knew plaintiff knew nothing of the record,
and that it was not called to plaintiff's attention.

If the evidence was immaterial, it was manifestly harmless
for the purpose for which it was offered and received, for the
court admitted the record in evidence. It is urged that Somers
was prejudiced thereby, in that the evidence had a tendency to
influence a belief in the minds of the jury that the defendants
were attempting to conceal something from the plaintiff. We
are not inclined to believe that the jury misunderstood the pur-
pose of the evidence; besides, the disposition of the case as to
Somers renders the question academic.

After Somers, who was the inventor of the machine, had
explained the defect and testified that it was trivial he was
asked, "Were you able to correct that defect by a further study
of the machine?" The question was objected to and excluded,
when defendants' counsel offered to show that the defect was
cured and the machine perfected; "and that these parties got
the benefit of it so that they could not claim to be damaged by
that, * * * got all the benefit of a perfect machine under their
contract." The defendants now argue that the offered evidence

was admissible on the question of damages, that it tended to show that the machine was of much value, and that a little change made it all that it was represented to be. But this was not the claim made below. Their position then was that the subsequent improvement perfected the machine, and that Alexander and the plaintiff had the benefit of the improvement and so had no claim for damages. It was upon this claim that the court ruled in excluding the offer. Defendants' position at the trial was untenable, as their counsel tacitly admit by abandoning it here. If the evidence was admissible on the question of damages, it is too late to make the claim here. The claim accompanying the offer controls and defeats the exception.

Somers having testified that he was to some extent familiar with other vending machines on the market and that such machines were in operation to a considerable extent, was asked, "Do you know whether those machines under the hands of an expert may be manipulated or not?" The question was excluded and an exception noted. Thereupon, defendants' counsel offered to show by the witness that such machines are in common use and that the machine in question was as perfect, or more perfect than the other machines on the market used for like purposes. The offer was excluded and an exception noted. It is urged that the exclusion of the offer was error; that the offered evidence was a direct contradiction of plaintiff's claim as to the character of the machine and tended to show that it was practically as represented. It would not justify the representation that the machines, as then manufactured, were perfect to show that they were not more defective than any other like machine on the market. The claim that the offered evidence bore on the question of damages was not made below, and so is not for consideration.

Alexander was called as a witness by the plaintiff and was asked in direct examination what property he had on October 24, 1912 (the date of the contract), in Vermont. The question was objected to as not within the declaration, and the objection was overruled and an exception noted. Having answered that he did not have any real estate in Vermont, he was then asked, "What did you have in Vermont in the way of attachable property?" to which a general objection was interposed. At the court's suggestion, the question was amended by leaving out "attachable," and without further objection or exception the wit-

ness answered, "I had approximately $7,000." Treating the question as saved, as counsel have done, the exception is without merit. One of the alleged representations was, in substance, that Alexander had sufficient means to purchase one-half of the New York right. This covered the ground of objection specified. It is unnecessary to consider whether the ruling would be sustained on other grounds.

Each of the defendants excepted to "that portion of the charge in which the court said, in substance, you will inquire whether there is any evidence tending to show conspiracy or fraud"; and again to "that portion of the charge where in referring to the vote of the directors October 28, 1912, giving Alexander fifty per cent. on the sale of tool equipment, the court said, in substance, does that evidence tend to show fraud and conspiracy?" The ground of each exception was that it was for the court, and not the jury, to say what the evidence tends to show.

The nearest approach to the language complained of in the first of these exceptions occurs at the close of a review of the evidence respecting the sale and various prior transactions. The jury was admonished to examine closely all the facts surrounding the sale and prior thereto. Proceeding, the court said: "As I have said, it is not to be guesswork, but you will say whether the circumstances tend to prove a fraud or tend otherwise. You must have established by legal evidence the fact of conspiracy and fraud," etc.

It is urged that in effect the jury was instructed that it was only necessary that they should find evidence tending to show fraud or conspiracy to find a plaintiff's verdict. If the charge was calculated to give the jury any such understanding, it was manifest error. It will be noticed that in neither instance did the court tell the jury that if the evidence tended to show fraud or conspiracy, they should find for the plaintiff. We think that the portions of the charge excepted to should not receive this construction. Where circumstantial evidence is resorted to to prove a fact, it may happen that the isolated circumstances, or some of them, are equivocal. They may or may not support the claim according as they are viewed in the light of the attending circumstances. It is then for the jury to say what significance they will attach to a particular

circumstance in view of all the evidence, or in a sense to decide upon the tendency of that evidence. Wills on Cir. Ev. 422a-422g. This is quite distinct from the ordinary function of the court in ruling upon the tendency of evidence, which cannot be abdicated to the jury without error.

The language employed was not fortunate; but, considering the whole charge, we think that the court intended no more than to leave the significance of the particular circumstances to the jury, and that they were not misled by the language employed. They were elsewhere told that fraud and conspiracy may be proved by circumstances from which the fact could be inferred; and that, if such circumstances were established and were of a character to produce in their minds a conviction of the fact of conspiracy and fraud, they could find that conspiracy and fraud had been proved. Continuing, the court took up certain isolated circumstances and called attention to the conflicting claims as to their bearing on the main issue. It was in this connection that the portions of the charge excepted to occurred. The exceptions do not show reversible error.

The defendants excepted to the failure of the court to charge as requested in certain specified requests. One of these was for an instruction that no misrepresentation is fraudulent unless made with the knowledge of its falsity, and such knowledge cannot be presumed from the mere falsity of the representation. The request was properly denied. In the form presented it was unsound, in that it ignored false representations made as of one's own knowledge without in fact knowing them to be true. The request follows the language of a head note to *Caldbeck* v. *Simanton*, 82 Vt. 69, 71 Atl. 881, 20 L. R. A. (N. S.) 844. The note omits the important qualification which appears in the opinion, though differently expressed. The charge dealt with the subject matter of the request in a manner not excepted to.

Another request was for an instruction that there was no evidence in the case to prove that Alexander's representations to the plaintiff as to the financial standing of the defendant company were not true. The request was entirely outside the case as it went to the jury. The plaintiff did not claim a recovery on this ground and there was no occasion for the court to refer to the matter. To do so would have been to confuse rather than aid the jury in their deliberations.

The error in overruling defendant Somers' motion for a directed verdict requires a reversal as to him. The other exceptions are not sustained.

*Judgment except as to defendant Somers affirmed. As to him, judgment reversed, and judgment that he is not guilty and that he recover his costs.*