ARTHUR W. THOMAS ET AL. *v.* EDWARD JOHNSON.

May Term, 1936.

Present: POWERS, C. J., SLACK, MOULTON, THOMPSON and SHERBURNE, JJ.

Opinion filed October 6, 1936.

*Marvelle C. Webber* and *Christopher A. Webber* for the plaintiffs.

*Andrew C. Calvi* (*Silas E. Everts* of Granville, N. Y., of counsel) for the defendant.

SHERBURNE, J.   It appears from the findings of fact that on March 6, 1934, the plaintiffs owned a certain house and lots in Poultney, Vermont, and the defendant, a farm in Granville, New York.   On this date the plaintiff Thomas and the defendant entered into an agreement in writing under seal whereby the defendant agreed to sell, and Thomas to buy, the said farm for the price of $5,000.00, to be paid $3,500.00 in cash and by the conveyance to the defendant by Thomas of the house and lots, which were to be accepted as a payment of $1,500.00.   This agreement, among other things, provided that the risk of loss by fire until delivery of the deed was assumed by the seller and that taxes and fire insurance premiums, if any, should be apportioned to the day of taking title.

On March 8, 1934, the plaintiffs executed and delivered to the defendant a deed of their house and lots, and the plaintiff Thomas and the defendant entered into another agreement in writing under seal whereby the defendant recited that he had sold his farm to Thomas, and agreed to convey it to him upon the punctual payment of the consideration in full, and acknowledged receipt of $1,500.00 down payment; and Thomas agreed to pay the defendant $3,500.00 on or before April 1, 1937, with interest at five per cent payable annually.   Under this agreement Thomas was to have immediate possession of the farm to use and improve as his own in a good husbandlike manner, was to pay taxes from April 1, 1934, and also to pay all insurance premiums for insurance covering the buildings on the farm; and in case of loss by fire the sum of money received from the insurance company should be applied first to reduce the amount of the consideration money then due and owing to the defendant, and the balance, if any, for the benefit of Thomas.

On March 6, 1934, before the execution of the earlier agreement, and on March 8, 1934, prior to the execution of the later agreement, the defendant represented and stated to the plaintiffs that the buildings on the farm were insured to an amount of $6,000.00 and that such insurance was in full force and effect. The plaintiffs relied upon these representations, and such representations were part of the inducements for them to purchase the farm and also to convey their house and lots.   At the time of the making of these representations there was no insurance policy of any kind in force insuring the farm buildings.   Such representations were made by the defendant as of his own

knowledge, and at the time he made them he did not have knowledge of the fact that such insurance was actually in force. At the time of making these representations he intended that the plaintiffs should rely thereon, and they were made for the purpose of persuading the plaintiffs that the farm was worth $5,000.00.

There was no agreement or understanding between the parties that the insurance policy represented to have been in force was to be assigned or transferred to the plaintiffs, or that the defendant was to keep insurance in force upon the farm buildings except such agreement and understanding as arises from the provisions above mentioned in the later agreement about payment of insurance premiums and the application of insurance money in case of loss.

On March 20, 1934, the dwelling house on the farm was burned and totally destroyed. Such loss was a substantial depreciation to the value of the farm. Plaintiffs never took possession of the farm. The deed to it was never executed and delivered, nor was any further money paid on the purchase price. Because of the destruction of the farm house, defendant could not and cannot convey all and the same premises which he agreed to convey.

The plaintiff's bill of complaint for a cancellation of the sale and to enjoin the defendant from prosecuting an ejectment suit to remove Thomas from the Poultney property was dismissed by the chancellor, and the case is here upon the plaintiffs' appeal therefrom.

The plaintiffs brief three grounds for relief as follows: 1. That irrespective of the contract the risk of loss by fire was on the defendant and so the contract cannot be enforced; 2. That the contract itself provided that the risk of loss by fire was assumed by the defendant; and 3. Because of defendant's fraud. We will first take up the second point.

█ We accept as a correct statement of the law the quotation from *Riverside Coal Co.* v. *American Coal Co.*, 107 Conn. 40, 139 Atl. 276, set forth in plaintiffs' brief as follows: "As a general rule, when the new contract is in regard to the same subject matter and has the same scope as the earlier contract and the terms are inconsistent either in whole or in a substantial part so that they cannot subsist together, the new contract abrogates the earlier one *in toto* and takes its place, even though there is no

express agreement that the new contract shall have that effect.'' See also *Drown & Willard* v. *Forrest,* 63 Vt. 557, 561, 21 Atl. 612, 14 L. R. A. 80.

■ The plaintiffs' deed and the later contract are in regard to the same subject matter and have the same scope as the earlier contract, and the terms are so inconsistent that they cannot subsist together; for it should be noted that, whereas the earlier agreement covers a cash transaction where possession and title follow payment of the price, under the later agreement the plaintiff Thomas is entitled to immediate possession to use and improve as his own before payment of the balance of the purchase price, and expressly agrees to pay all fire insurance premiums, and that in the event of loss by fire the insurance money shall be first applied to reduce the amount of the unpaid purchase price, and the balance, if any, shall be for his benefit. The situation is unlike that in *Pike* v. *Pike,* 69 Vt. 535, 38 Atl. 265, cited by plaintiffs, where it was manifest that the parties did not take a part of the property out of the operation of a former contract, for they came to no agreement in regard to it.

Although Thomas did not actually take possession of the farm, we are unable to distinguish the legal effect of the later situation from that in *Baker* v. *Rushford,* 91 Vt. 495, 497, 101 Atl. 769, 770, so far as we quote therefrom below: ''The relations of these parties at the time of the fire were those of vendor and vendee, under a contract of sale which provided for a subsequent transfer of the title on the making of certain payments, and a contemporaneous mortgage of the premises to the vendor to secure the balance of the consideration. But the rights of the parties are the same as they would have been if the fire had occurred after the conveyance, other conditions remaining the same. This was in law an executory contract, which left the legal estate in the vendor; but, except for his interest in the property as security, the vendor held the title in trust for the vendee, whom equity regards as the owner.'' We hold that the earlier agreement was abrogated and superseded by the deed and later agreement.

■ As we interpret and construe the later agreement, the defendant was to attend to keeping the farm buildings insured, but the cost of the insurance was to be borne by Thomas, and he was to take the risk of loss, and in the event of loss by fire, have the insurance money applied upon the unpaid purchase price,

and the balance, if any, for his benefit. Under this view of the agreement it is unnecessary to determine where the loss would fall irrespective of such agreement, as plaintiffs point No. 1 assumes that the contract contains no provision governing the risk of loss.

Point No. 3 presents a more serious question. To constitute actionable fraud in the sale of property the representations must be of existing facts relating to the subject matter of the contract and affecting its essence and substance, made by the vendor as inducements to the contract, such representations being false and at the time known to him to be false, or made as of his own knowledge without in fact knowing them to be true, not open to the knowledge of or known by the other party and relied upon by him in making the purchase to his damage. *Hunt* v. *Lewis*, 87 Vt. 528, 530, 90 Atl. 578, Ann. Cas. 1916C, 170; *Arnold* v. *Somers*, 92 Vt. 512, 519, 105 Atl. 260. There can be no question but that the findings show that defendant's representations regarding the fire insurance upon the farm buildings were fraudulent. See also *Stevens* v. *Block*, 90 Vt. 81, 83, 96 Atl. 697.

But the defendant insists that such representations related to a collateral and immaterial matter. Unquestionably, in order to be material, the representations must relate to the subject matter of the contract and affect its essence and substance as above stated. The situation here is comparable to that in *Shanks* v. *Whitney*, 66 Vt. 405, 29 Atl. 367. There the parties contracted to exchange properties, and there being a mortgage upon defendants' property, they falsely represented that they knew a man who was ready to take the mortgage at a lower rate of interest, and the representations were held to be material. The findings show that the representations were relied upon as an inducement to make the trade, and so we cannot speculate upon what the plaintiffs would have done but for the representations. *Cabot* v. *Christie*, 42 Vt. 121, 127, 1 A. R. 313. In view of the provision in the later agreement about how the insurance money should be applied in the event of loss, the farm was worth more to the plaintiffs if insured than if uninsured, for with insurance their risk of loss was diminished. We think that the representations were material.

To entitle the plaintiffs to relief, however, it must appear that there is some causal connection between the fraudulent rep-

resentations and the damages which plaintiffs claim to have suffered, or, in other words, that the fire loss was the proximate result of the representations. *Arnold* v. *Somers, supra; Smith* v. *Bolles*, 132 U. S. 125, 33 L. ed. 279, 10 Sup. Ct. 39; *Silver* v. *Frazier*, 3 Allen (85 Mass.) 382, 81 A. D. 662; *Lowrie* v. *Castle*, 225 Mass. 37, 113 N. E. 206.

■ The defendant only represented that valid insurance was in force. If this is taken literally, it might apply only to the instant the representation was made, and because the loss did not occur until twelve days later, it might be said that the representation did not mean that a policy, had there been one, would not have expired by that time. In view of our interpretation of the agreement that the defendant should attend to keeping the buildings insured at the cost of plaintiff Thomas, we think that the natural and reasonable meaning of the words used is that the insurance, then represented to be in force, did not expire for a reasonable period of time. Hence, we are satisfied that, because of plaintiffs' reliance upon the representations, they were lulled into a false sense of security, and that the fire loss was a proximate result of the representations.

*Decree reversed and cause remanded, with directions that a decree be entered for the plaintiffs cancelling the contract and deed, and permanently enjoining the defendant from prosecuting his ejectment suit.*