**Elsinor Prouty MALLORY, Plaintiff-Appellee,**

v.

**CITIZENS UTILITIES COMPANY, Defendant-Appellant.**

**No. 189, Docket 29995.**

United States Court of Appeals. Second Circuit.

Argued March 11, 1966.

Decided April 1, 1966.

Kenneth P. Akey, Burlington, Vt. (Frederick J. Fayette, Burlington, Vt., on the brief), for appellee.

Milton S. Gould, New York City (Clifton G. Parker, Morrisville, Vt., Shea, Gallop, Climenko & Gould, New York City, on the brief), for appellant.

Before SMITH, HAYS and ANDERSON, Circuit Judges.

HAYS, Circuit Judge:

This case is before us for a second time, having been remanded on a previous appeal for the district court to make findings of fact and conclusions of law and to enter judgment thereon. Mallory v. Citizens Utilities Company, 342 F.2d 796 (2d Cir. 1965).

For a number of years prior to 1962 there had been litigation in both the courts of the State of Vermont and in the United States District Court for the District of Vermont between the Prouty heirs, including the appellee, Mrs. Elsinor Prouty Mallory, and the appellant, Citizens Utilities Company. In July 1962 the suit of the Prouty heirs, seeking specific performance of an agreement by Citizens Utilities to purchase property located along both sides of the Clyde River in Orleans County, Vermont, for the sum of $300,000, was pending before the district court.

On July 23, 1962 Mrs. Mallory addressed a letter to appellant offering to settle her one-quarter interest in the long-standing claim. On August 9, 1962 she entered into an agreement with ap-

pellants to convey her interest for $11,-250. On September 12, 1962 the district court awarded judgment in favor of the Prouty heirs, and required Citizens Utilities to pay them $300,000 plus interest.[1]

Mrs. Mallory brought this action to set aside her August 9, 1962 settlement agreement with Citizens Utilities on the ground that it was "fraudulently induced or otherwise unconscionable." The district court rendered judgment for Mrs. Mallory. We reverse.

The facts of the case are relatively simple. In August 1961 Mrs. Mallory moved to California. While in California she relied on her brother John Prouty and the heirs' attorney, Graves, for information concerning the Prouty litigation. During this period she was in continuous financial need. She was entitled to receive rent from the Citizens Utilities for her share of the property in litigation but she had assigned the right to these rental checks to her brother in payment of a loan from him. On July 15, 1962 Mrs. Mallory sent a telegram to her brother demanding money he owed to her from the excess of the rental checks over the loan. She threatened that "if immediate satisfactory action isn't forthcoming, will take whatever legal action necessary and *will settle separately with power company*" (emphasis added).

On July 23, 1962, eight days after sending the telegram, Mrs. Mallory, having received no answer from her brother, wrote a letter to Citizens Utilities, which reads in relevant part:

"I called my lawyer here this morning and he said to write you and have the check to John stopped as of now and also to contact a lawyer we know in Vermont to start legal proceedings. We did that this afternoon and our lawyer in Vermont is Kenneth P. Akey of Burlington. He will no doubt be in touch with you in the near future.

\*　　\*　　\*　　\*　　\*

At this time I am also interested in finding out if it is *possible to settle*

---

1. We affirmed this decision. See Prouty v. Citizens Utilities Company, 321 F.2d

34 (2d Cir.), cert. denied, 375 U.S. 920, 84 S.Ct. 265, 11 L.Ed.2d 164 (1963).

*my one-quarter interest* in the Pulp Mill property separately with your company. I would be very interested right now in a cash settlement which would free your company of $156.25 monthly payments to me. There are other advantages which I am sure you can figure out for yourself. *I would only be interested if a settlement could be reached within fifteen days.*" (Emphasis added.)[2]

On August 3, 1962, Mr. Gibbs, an officer of Citizens Utilities, called Mrs. Mallory. During their conversation Mrs. Mallory asked "how the case was going." There is contradictory testimony concerning Gibbs' reply, but taken in the light most favorable to appellee, Gibbs allegedly answered "that it was still in the courts and as far as he knew, it would be a long time before a definite decision was made." Gibbs informed Mrs. Mallory that Citizens Utilities would pay no more than $11,250 for her interest; he agreed to Mrs. Mallory's request for time to think the matter over. On August 6, Mrs. Mallory telephoned Gibbs and made a counter-offer of $15,000; Gibbs stood by his original $11,250 offer. Mrs. Mallory then said that she needed the money and had no alternative but to accept. A settlement agreement was signed on August 9. As has been stated the district court granted judgment in favor of the Prouty heirs on September 12.

Appellee concedes that the principles of fraud as established by the law of Vermont, and not some general "doctrine of unconscionable conduct," are applicable. To constitute fraud under Vermont law, the misrepresentation or attempt to

ensnare must be purposefully made, be "relied upon" by the injured party, and must concern "existing facts relating to the subject matter of the contract and affecting its essence and substance." Thomas v. Johnson, 108 Vt. 363, 369, 187 A. 375, 378 (1936).

Here, Mrs. Mallory answered affirmatively to a question concerning whether the settlement offer was her "free and spontaneous idea." She testified to a "good bit of business experience" and knew that she was "selling something potentially more valuable for a lower price." The statement in her letter that she "would only be interested if a settlement could be reached within 15 days," explains appellant's emphasis on speed.

Mrs. Mallory repeatedly acknowledged during her testimony that in entering into the agreement she was motivated by her economic circumstances, and not by any expectation as to how long the litigation might continue. On the prior appeal we held that "it was never claimed or shown that the appellant knew of * * * [Mrs. Mallory's economic] hardships." Mallory v. Citizens Utilities Company, supra, 342 F.2d at 797. Even if Gibbs made the comment about a "long time" in the courts, it has not been shown that the comment was other than an honest statement of opinion, an opinion which, it might be thought, was subsequently proved correct.[3]

There is no indication of any attempt at deception or misrepresentation. The records and proceedings of the district court were public. Mrs. Mallory could easily have consulted any one of her

---

2. Mrs. Mallory, referring to rent checks, went on, presumably in an effort to fix a starting figure for negotiations, to observe that "three years at $156.25 per month will cost you $5625 so that should give you something to go on if you are interested." But there was no indication that the suggestion that the litigation could go on for three more years was based on anything appellant said. Indeed, Mrs. Mallory testified that she had no particular reason for selecting three years and could as easily have used five years or two years or one.

3. The district court awarded judgment to the Prouty heirs on September 12, 1962. But Citizens Utilities appealed and our opinion affirming that decision did not come down until July 19, 1963. The final judgment order was not issued until December 28, 1963, shortly after appellant's petition for certiorari was denied. Thus, the other Prouty heirs were not paid until January 2, 1964, nearly seventeen months after Mrs. Mallory settled her claim with appellant.

three attorneys about the status of the case.[4]

Crompton v. Beedle & Thomas, 83 Vt. 287, 297, 75 A. 331, 334, 30 L.R.A.,N.S., 748 (1910), relied on by appellee, is inapposite because there the vendee had knowledge of a fact, the existence of a "valuable granite quarry," of which he knew the vendor was ignorant, and which was not available to the vendor by any ordinary means, and by deliberately withholding this information, the vendee had "actively attempted to ensnare, and * * [had] in fact ensnared, the vendor into the making of an unconscionable contract."

Mrs. Mallory made a bad bargain, but there was no fraud.

Reversed and remanded for entry of judgment in favor of appellant.

---

4. Indeed, the record indicates that Mrs. Mallory specifically requested that Gibbs not contact Graves, the Prouty heirs' attorney, because she feared that Graves might hinder settlement negotiations.