Chimney Hill Owners' Association, Inc. v. Serafin R. Antignani and Gloria R. Antignani
and
Chimney Hill Owners' Association, Inc. v. Eastern Woodworking Company
and
Chimney Hill Owners' Association, Inc. v. Kenneth G. Keatinge and Margaret Keatinge

[392 A.2d 423]

Nos. 264-77, 265-77 and 268-77

Present: Barney, C.J., Daley, Larrow, Billings and Hill, JJ.

Opinion Filed September 12, 1978

448

*John S. Burgess,* Brattleboro, and *Keil & Freeman,* Springfield, for Plaintiff.

*McCarty & Rifkin,* Wilmington, for Defendants.

Hill, J. The plaintiff brought these actions to recover assessments allegedly due on lots owned by the defendants in Chimney Hill in Wilmington, Vermont. After a trial, findings of fact, conclusions and an order were filed by the district court awarding judgment to the defendants. The plaintiff appeals.

Chimney Hill is a recreational second home development begun in 1966 by Chimney Hill Corporation. The area consists of in excess of 900 lots. Most owners in the development have purchased only one lot; approximately 30 owners, however, including these defendants, hold multiple lots in Chimney Hill.

In addition to lots, Chimney Hill has a large area, between 300 and 500 acres, that is "common land." On this land, there is a large clubhouse, indoor and outdoor swimming pools, and three tennis courts. Also, the common land includes about 18 miles of roads and a complete underground private water system, which services the community. Chimney Hill Corporation owned and maintained the common land until 1975, when it was conveyed to the plaintiff.

A Declaration of Protective Covenants, Restrictions and Reservations pertaining to Chimney Hill was executed by Chimney Hill Corporation and recorded in the Town Clerk's office in Wilmington. The Declaration was included in each purchase and sales agreement and each deed executed for lots in Chimney Hill. Paragraph 10 of the Declaration is the focus of the dispute in these actions.

Paragraph 10 states that an annual charge shall be assessed against each lot in Chimney Hill and paid "to the grantor, its successors and assigns" for the right to use the common lands, facilities and services maintained and provided by the "grantor, its successors and assigns." The charge is made a debt collectible by suit in a court of competent jurisdiction and a lien on the lot conveyed until paid. Paragraph 10 further provides that acceptance of a deed bound by the Declaration shall be construed to be a covenant by the grantee, his heirs, successors and assigns to pay the charge to the grantor, its successors and assigns. Lastly, Paragraph 10 (E) states:

> That this charge shall run with and bind the land hereby conveyed, and shall be binding upon the grantee or grantees, his, her, their, or its heirs, executors, administrators, successors and assigns, until May 31, 1988, unless earlier terminated by written release of the grantor, its successors or assigns.

Defendant Eastern Woodworking Company (hereinafter Eastern) is the owner of 11 lots in Chimney Hill acquired in 1968 from the Chimney Hill Corporation. The purchase and sales agreement executed by Eastern contains the usual provisions and has the Declarations printed on the reverse side. Also, the agreement states: "There will be one annual charge . . . until one or more of the lots have been improved. . . ."

The agreement was signed by a Mr. Cullen, then president of Chimney Hill Corporation.

Defendants Keatinge purchased three lots from the Chimney Hill Corporation in December, 1967. Defendants Antignani became the owners of two lots in 1969. Eastern, the Keatinges and Antignanis were each billed for only one assessment yearly by Chimney Hill Corporation during the period that Chimney Hill Corporation owned and maintained the common lands, facilities and services.

The plaintiff is an association of owners of property in Chimney Hill. On May 25, 1975, the plaintiff accepted a quitclaim deed from Chimney Hill Corporation that conveyed to the plaintiff the common lands and facilities of Chimney Hill. Also, Chimney Hill Corporation assigned the right to collect the assessments to the plaintiff, which again was accepted by the plaintiff on May 25, 1975. The plaintiff thus now owns and maintains the common lands and facilities of Chimney Hill. The trial court found that prior to receiving the quitclaim deed and the assignment the plaintiff "was aware that at least some owners of multiple lots paid only a singular assessment." Finally, in 1975, the plaintiff billed the Keatinges for three assessments, the Antignanis for two assessments, and Eastern for eleven assessments. Each of the defendants paid only a singular assessment, and these actions followed.

The trial court awarded judgment to all three defendants. The court concluded that Chimney Hill Corporation released Eastern from any obligation to pay on ten of its lots, as long as the lots remained unimproved, by virtue of the language in its sales agreement specifying one annual charge. Concerning all defendants, the court concluded that the Chimney Hill Corporation had waived all but singular assessments. This conclusion, the court stated, followed from the fact that Chimney Hill Corporation had never billed any of the defendants for more than one assessment, demonstrating a clear intent to waive multiple assessments. The court also noted Mr. Cullen's testimony that it was the corporate policy of Chimney Hill Corporation to bill every multiple lot owner for only one assessment. Finally, the court concluded that these defenses of release and waiver were available and binding on Chimney Hill Corporation's assignee, the plaintiff.

In these actions, the plaintiff urges a right to recover the assessments in three separate capacities. First, the plaintiff seeks a recovery as the representative of all the property owners in Chimney Hill. Secondly, the plaintiff alleges rights based on the assignment made by Chimney Hill Corporation to it. Lastly, the plaintiff claims rights based on the assessment covenant in the Declarations, which are recorded with the Town Clerk and recited in each sales contract and deed pertaining to Chimney Hill.

In its briefs, the plaintiff asserts the rights of all the property owners of Chimney Hill by claiming that no release or waiver by Chimney Hill Corporation is binding on the plaintiff absent consent to the release and waiver by all who owned property in Chimney Hill at the time the release and waiver were effectively made. The plaintiff contends that each of these property owners has an interest in enforcing the covenant that must be released or waived by that owner. Absent such actions, the plaintiff states that any alleged release or waiver by Chimney Hill Corporation binds only that corporation.

■ The plaintiff has the ability to enforce the rights of its members in general in actions such as these. *Neponsit Property Owners' Association* v. *Emigrant Industrial Savings Bank,* 278 N.Y. 248, 262, 15 N.E.2d 793, 798 (1938). As the plaintiff recognizes, however, the existence of any such rights in the membership in general depends upon the existence of a common scheme or general plan for the development of the area. Although the question is close, a careful weighing of the evidence does not support the existence of a common plan on these facts.

It is true that Chimney Hill is a distinct area developed as one tract by the Chimney Hill Corporation. Also, the covenants in issue were filed with the Town Clerk and were in each sales agreement and each deed to the lots in Chimney Hill. These factors are suggestive of a common scheme. 5 R. Powell, The Law of Real Property, ¶ 679, at 203–04 (rev. ed. 1977).

■ These factors, however, are outweighed by the following. At the time of the conveyances to the lot owners, Chim-

ney Hill Corporation retained the common lands including the clubhouse, swimming pools, tennis courts, roads and water system. The assessment covenant provides that the annual charge is paid for the right to enjoy, subject to certain rules, these lands and facilities. There is no provision in the Declarations, nor any other evidence, tending to show that any transfer to a property owners' association was contemplated by Chimney Hill Corporation at the inception of the development. On the contrary, Mr. Cullen, past president of the Corporation, testified that the initial intent of the Corporation was not to turn over the common lands and the assessment income to a property owners' association. This suggests that the intent of the covenant was to benefit Chimney Hill Corporation in its capacity as owner of the common lands and not to benefit the lot owners in their capacity as lot owners; it negates the proposition that a common scheme was here intended. See *id.* ¶ 679, at 205.

■ Additionally, Paragraph 10(E) of the Declarations, quoted above, allows Chimney Hill Corporation, its successors or assigns[1] to release payment of the charge in writing. "A retention by the common grantor of a power either to release or to alter substantially the restrictions is strong evidence against the existence of an enforceable building development scheme." *Id.* ¶ 679, at 205–06. This is because the essence of a common scheme is that the benefit and the burden fall upon each lot in the development. A power retained by the common grantor to alter substantially this arrangement negates the reciprocity and mutuality necessary for a common scheme to exist.

No common scheme has been shown on the facts presented. The benefits of the assessment covenant do not extend to the lot owners in general. Therefore, they have no common right to enforce this covenant that the plaintiff can urge. The assessment covenant was susceptible of release or waiver by the Chimney Hill Corporation.

■ The plaintiff next seeks to recover the assessments, in its own right, under the assignment from Chimney Hill Cor-

---

[1] It is clear from the provisions of Paragraph 10 that "successors" and "assigns" refer to subsequent owners of the common lands.

poration. In the assignment, the Corporation assigned to the plaintiff the right to collect from each owner in Chimney Hill the annual charge provided for in Paragraph 10 of the Declarations. As assignee, however, the plaintiff takes the right to collect subject to all defenses of the obligor against the assignor that have not been acquired or set up in fraud of the rights of the assignee after notice has been given of their existence. *Downer* v. *South Royalton Bank,* 39 Vt. 25, 32 (1866).

As to the defendants Keatinge and the defendants Antignani, the trial court concluded that plaintiff's assignor had waived all but singular assessments. The court rested this conclusion on Chimney Hill Corporation's practice to bill these defendants for only one assessment and on its policy, as stated by past president Cullen, to bill every multiple lot owner for only one assessment.

 A waiver is the intentional relinquishment or abandonment of a known right and may be evidenced by express words as well as by conduct. *Lynda Lee Fashions, Inc.* v. *Sharp Offset Printing, Inc.,* 134 Vt. 167, 170, 352 A.2d 676, 677 (1976). A waiver of a covenant may be made orally by the party for whose benefit it was inserted, even if the instrument containing the covenant requires a writing. *Martin* v. *Martin & Carpenter,* 98 Vt. 326, 327–28, 127 A. 292, 292–93 (1925). As discussed above, the assessment covenant was for the benefit of Chimney Hill Corporation, its successors and assigns, as owner of the common lands, and therefore it was waivable by the corporation during the period it owned the common lands.

We are unable to agree that Chimney Hill Corporation's policy and practice to bill multiple lot owners for only one assessment can be construed to be an intentional permanent relinquishment of the right to charge for every lot. This policy and practice merely evidences a year by year waiver, especially in light of the provision in Paragraph 10(E) requiring a written termination and the Corporation's use of same with regard to Eastern. More substantial evidence is necessary to sustain a conclusion of waiver. See *Lynda Lee Fashions, Inc.* v. *Sharp Offset Printing, Inc., supra.* The judgment of the

trial court with regard to the defendants Keatinge and the defendants Antignani must be reversed.

■ As to defendant Eastern, the trial court concluded that it possessed a valid release from Chimney Hill Corporation concerning the ten unimproved lots, which was a valid defense to the plaintiff's claim. Paragraph 10 (E) of the Declarations reserves to the grantor, Chimney Hill Corporation, its successors and assigns, the right to terminate the annual charge on any of the lots. Eastern's sales agreement, executed by both Eastern and Chimney Hill Corporation, provides that one annual charge only will be assessed on Eastern's eleven lots until one or more have been improved. The sales agreement contains just the release contemplated by Paragraph 10 (E).

■ The plaintiff argues that the sales agreement merged into the deed, thus extinguishing the release because the deed does not contain it, citing *Thomas* v. *Johnson*, 108 Vt. 363, 187 A. 375 (1936). The rule in *Thomas* applies when the new contract has the same subject matter and scope as the earlier contract and the terms thereof are inconsistent either in whole or in a substantial part, so that they cannot subsist together. 108 Vt. at 367–68, 187 A. at 377. Here Paragraph 10 (E) of the Declarations in the deed expressly contemplates the possibility of a written release by separate instrument. Thus, the written release in the sales agreement does not contradict the deed, nor is it inconsistent with the deed in substantial part. The doctrine of merger stated by *Thomas* is not applicable here. Eastern's defense based on the release is valid against the plaintiff as assignee of Chimney Hill Corporation.

■ Finally, the plaintiff asserts rights based on the assessment covenant that is in the deed of each of these parties and on record in the Town Clerk's office in Wilmington. Because the plaintiff is not the original covenantee of the assessment covenant, the plaintiff may enforce the covenant only if it "runs with the land." *Albright* v. *Fish*, No. 36-78 (handed down September 11, 1978). For a covenant to be enforceable as running with the land, four requirements must

be met: a writing, intent, touch and concern, and notice. See *Albright* v. *Fish, supra; McDonough* v. *W. W. Snow Construction Co.*, 131 Vt. 436, 306 A.2d 119 (1973) ; *Welch* v. *Barrows,* 125 Vt. 500, 218 A.2d 698 (1966); *Latchis* v. *John,* 117 Vt. 110, 85 A.2d 575 (1952); *Queen City Park Association* v. *Gale,* 110 Vt. 110, 3 A.2d 529 (1938). Here there is a writing. The intent of the covenant is to benefit the owner of the common lands, its successors and assigns. A covenant to pay assessments meets the touch and concern requirement. See *Queen City Park Association* v. *Gale, supra.* Notice is amply provided by recording the Declarations and by placing the covenant in each deed to property in Chimney Hill. Thus, the assessment covenant runs with the land and is enforceable by the plaintiff as owner of the common land benefitted by the covenant.

Defendant Eastern has a valid written release signed by Chimney Hill Corporation, which unequivocally waives the right to annual charges on ten unimproved lots and which is binding on Chimney Hill Corporation. See *Martin* v. *Martin & Carpenter, supra;* 5 R. Powell, *supra,* ¶ 683, at 228.7. The court found at the time the plaintiff acquired the common lands and facilities it was aware that some multiple lot owners were being charged one assessment. The issue is whether with this knowledge the plaintiff is charged with the duty to inquire further as to when and why such single assessments were made. We think such inquiry should have been made. If such inquiry had been made of the Chimney Hill Corporation, the existence of Eastern's written release would have been revealed. The judgment in favor of Eastern must be affirmed.

*Judgment for defendant Eastern Woodworking Company affirmed. Judgment reversed as to defendants Keatinge and Antignani, and cause remanded in each of these cases for computation of appropriate amount of assessment due and entry of judgment in favor of the plaintiff accordingly.*